# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONNA THERIAULT,             )
                             )
        Plaintiff,     )      2:07-cv-227
  v.                         )
                             )
                             )
DOLLAR GENERAL,              )
                             )
        Defendant.     )

## MEMORANDUM ORDER

Pending before the Court is Defendant's MOTION FOR SUMMARY JUDGMENT (Document No. 18). The matter has been thoroughly briefed (Document Nos. 19, 27, 29) and is ripe for disposition. The factual record has also been thoroughly developed via the Statement of Material Facts of Defendant Dollar General[1] (Document No. 20), Plaintiff's Statement of Material Facts Precluding Summary Judgment (Document No. 26) and Defendant's Reply Statement of Undisputed Material Facts (Document No. 32), and the numerous exhibits submitted by both parties.

Factual and Procedural Background

Defendant owns and operates discount retail stores. Plaintiff Donna Theriault was employed by Dollar General as Store Manager of its Bellevue, Pennsylvania store from September 15, 2005 until her termination on March 9, 2006. During the time period relevant to this lawsuit, Theriault reported to District Manager Joe Trowery, who was hired by Dollar General in December 2005. Trowery reported to Regional Manager Jim Sullivan, who in turn reported to Division Manager Jody Mahramas. Before terminating a Store Manager, a District Manager must work with a Field Employee Relations Coach ("FER Coach"), who in this case was Yvonne Barrett. Trowery and Barrett are African-American.

Dollar General has a corporate policy which prohibits discrimination, harassment and

---

[1]The Defendant's corporate name is actually Dolgencorp, Inc.

retaliation and provides a procedure by which employees can report alleged violations to the Employee Response Center ("ERC") by calling a 1-800 phone hotline. Upon her hire, Plaintiff received a copy of this policy and signed a receipt.

On November 19, 2005, Theriault suffered a hand injury while at work. Until January 12, 2006, she was under a medical light-duty restriction and from January 12-30, 2006 she was unable to work. From January 30-February 2, 2006, Theriault contends that Trowery required her to help move gondolas in the store, which reaggravated her injury. Thereafter, Theriault remained away from work on injury leave until her discharge. While Plaintiff's duties were restricted, Trowery told her that he needed to get someone else into the store and also gave her lists of tasks that needed to be completed. On February 6, 2006, Theriault contacted the ERC to report that Trowery had required her to work beyond her medical restrictions and had otherwise suggested that her job would be in jeopardy if she did not return to work. Barrett instructed Trowery to obtain witness statements regarding these allegations. Sullivan assured Theriault that her job was safe and ordered her to stay home from work until medically cleared to return. Trowery was warned by Sullivan to abide by Plaintiff's medical restrictions and to limit his contact with Theriault while she was on medical leave. The next week Theriault went to the store to pick up her paycheck and Trowery allegedly yelled at her for calling the ERC hotline.

Plaintiff contends that in December 2005, Trowery engaged in the following questionable behavior: (1) told her three times that she had a "nice ass"; (2) engaged in a sexually explicit phone call with his girlfriend in Theriault's presence; and (3) told Theriault that he would soon be able to date her because he would no longer be her supervisor. Plaintiff requested that Trowery stop any such comments and the comments indeed stopped. Plaintiff did not report any of this alleged conduct to the ERC.

Plaintiff also alleges that she received a phone call in late February 2006 from store employee Taneisha Stewart. Stewart allegedly told Plaintiff that Trowery claimed that Theriault was harassing him (Trowery) by calling and saying that she (Theriault) "would show [Trowery]

the time of his life."[2] In response to the phone call from Stewart, Plaintiff decided to contact Sullivan directly, rather than the ERC. She told Sullivan on February 28, 2006 that she needed to speak about sexual harassment due to comments being made by Trowery. However, Sullivan was in the midst of a meeting with multiple District Managers (including Trowery) at the time and told Theriault that he would call her back. Sullivan never returned the call. When Theriault received no response from Sullivan, she left him another message. On March 5, 2006, after Sullivan failed to contact her, Theriault attempted to email Mahramas about Trowery's conduct in early February regarding her work restrictions and his alleged comment to Taneisha Stewart. Because Plaintiff mis-typed the email address, Mahramas never received the email. Trowery became aware of Theriault's allegations and on March 1, 2006, he left a voicemail for Barrett which stated that he was "mentally exhausted" by Theriault and that she was causing him much grief.

On March 3, 2006, Trowery called Jim Sullivan and then Yvonne Barrett and reported that Plaintiff had telephoned and called him "a fucking nigger" (the "Racial Slur"). Trowery also sent an email and a handwritten statement to Barrett that same day. The email stated:

> Today Donna called my phone and called me a fuckin nigger. Donna says that I am trying to turn all her employees against her. Donna says Jim Sullivan and I have never liked her. Donna says that the whole company is going to pay for trying to take her store away from her. I never made a comment while she talked. I hung up the phone after her last comment.

The handwritten statement added further details:

> Today March 3, 2006 I answered my home phone. There was no telephone number, it was marked private. I didn't know who it was. As soon as I said hello a voice said "This [is] Donna you fuckin Nigger." I recognized the voice instantly. It was Donna Theriault from my Bellvue store. Donna said "I am trying to turn all of her employees against her." Donna also stated that Jim Sullivan and I have never liked her. Donna says the whole company is going to pay for trying to take her store away. I never made a comment to her at all. I just hung up the phone.

In his deposition on November 7, 2007, Trowery explained that he told Sullivan on March 3, 2006 that he was not "one hundred percent sure" that the caller was Plaintiff, but that "I think it

---

[2]The Court notes that this testimony involves multiple levels of hearsay. Stewart denied making this statement. Stewart Dep. at 24.

3

was probably her . . . it sounded like her." Trowery also explained that he thought it was Plaintiff "judging from what was said and what store it was about." Trowery Dep. at 28-31. That deposition was terminated due to Trowery's refusal to answer any further questions. In the reconvened deposition on February 5, 2008, Trowery testified unambiguously that the statement which he sent to Barrett on March 3, 2006 was accurate. Trowery Dep. II at 26.

Barrett, after consultation with legal counsel, determined that Theriault should be terminated for inappropriate conduct – using inappropriate, derogatory language toward a District Manager. The email chain in Plaintiff's Exhibit 18 reflects that Barrett was aware that Theriault was causing Trowery grief and that Theriault had informed Stewart that she was going to accuse Trowery of sexual harassment. Exhibit 18 also states that Barrett asked Trowery whether Donna had identified herself during the March 3, 2006 telephone call and Trowery responded that "he knows Donna's voice and she also made all of the above [statements] about her [store]." Later in Exhibit 18, Barrett notes: "Her behavior is not acceptable and altho [sic] no witness, DM Joe e-mailed FER right after it happened and Law Dept. supports term[ination]." On March 15, 2006, Barrett sent an email which stated: "I partnered with Jim Sullivan to terminate SM Donna Theriault." Sullivan made the actual phone call to Plaintiff on March 9, 2006, in which he stated that he had made the decision to terminate her employment.[3] Dollar General's policy provides that an investigation will be conducted into all complaints of discrimination and harassment. Barrett testified that she did not contact Theriault to get "her side of the story" because there was no reason to disbelieve Trowery.

On October 19, 2006, at a hearing regarding Plaintiff's workers' compensation claim, Trowery testified that Theriault's phone number had appeared on his Caller ID during the March 3, 2006 Racial Slur phone call. In his second deposition, Trowery stated that this part of his hearing testimony was a lie, and that her number did not appear on his Caller ID. Trowery Dep. II at 9-10. Trowery never told Barrett or Sullivan that he saw Theriault's phone number on his

---

[3]This contemporaneous email is consistent with the information provided in Defendant's Responses to Plaintiff's First Interrogatories. Defendant filed an amended response that stated that Sullivan was not a decision-maker.

4

Caller ID. *Id.*; Plaintiff's Exh. 18 (DM stated "the call was from a blocked number.")

Trowery was terminated from his employment at Dollar General in February 2007. Some time after he was terminated, Trowery telephoned Plaintiff. She alleges that during that call, Trowery recanted his testimony at the workers' compensation hearing and stated that he and Sullivan had devised the "Racial Slur" story as a pretext for terminating Theriault's employment so that Dollar General would not have to pay her workers' compensation. Trowery denies this allegation. Trowery did apologize to Plaintiff if he had wrongly accused her of making the March 3, 2006 phone call and contends that he urged Plaintiff to tell the truth about her sexual harassment allegations. Trowery stated that he now thinks it was not Plaintiff who called him and used a Racial Slur. Trowery Dep. II at 17.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh*

*Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Evidentiary Ruling

The Court must first consider the admissibility of Plaintiff's testimony regarding the statements allegedly made to her by Trowery on the telephone after his employment at Dollar General had been terminated. Plaintiff intends to testify that Trowery admitted during that phone call that he and Sullivan had made up the Racial Slur accusation as a pretext or cover-up justification for firing her. Obviously, if the jury were to believe Plaintiff, the statements could be compelling evidence regarding Plaintiff's claim of retaliation for seeking workers' compensation. Defendant contends that the alleged statements are inadmissible hearsay, which cannot be used to defeat summary judgment.

Initially, Defendant contends that the motives of Sullivan and Trowery are irrelevant because the decision to terminate Theriault was made solely by Barrett. The Court does not agree. Under the "subordinate bias" theory as enunciated by the United States Court of Appeals

6

for the Third Circuit, the District Court must consider the discriminatory or retaliatory intent of all persons who "influenced" an employment decision. In *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265 (3d Cir. 2001), the Court held: "it is sufficient if those exhibiting discriminatory animus **influenced or participated in the decision to terminate**." *Id.* at 286 (emphasis added). In *Abramson*, the Court cited *Roebuck v. Drexel University*, 852 F.2d 715, 727 (3d Cir. 1988), for the proposition that a jury might permissibly conclude that a discriminatory evaluation at any level influenced the decisionmaking process and thus allowed discrimination to infect the ultimate decision. 260 F.3d at 286. In *Abramson*, the Court reversed a grant of summary judgment because two subordinates who displayed discriminatory animus "played a role" in the decision. In *Foster v. New Castle Area School Dist.*, 98 Fed. Appx. 85 (3d Cir. 2004), a more recent Third Circuit case, the panel found the Fourth Circuit's analysis in *Hill* to be "both applicable to this case and persuasive." 98 Fed. Appx. at 88. In *Foster*, the Court held that an employer would not be liable for an improperly motivated person "who merely influences the decision," but only for the actual decisionmaker. *See also Russ-Tobias v. Pennsylvania Board of Probation and Parole*, 2006 WL 516771 *26-27 (E.D. Pa. March 2, 2006) (citing *Foster* and *Hill* and applying "actual decisionmaker" test). The Court recognizes the conflict between *Foster* and *Abramson*. However, *Foster* is a nonprecedential opinion and this Court is bound to follow *Abramson*.[4] *See also Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 297-99 (3d Cir. 2007). Under the "cat's paw" theory, an allegedly biased subordinate who lacks decision-making authority "uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006), *cert. dismissed* 127 S. Ct. 1931 (2007) ("*BCI*"). There is, at a minimum, a factual dispute as to whether Trowery and/or Sullivan influenced the decision to terminate Theriault's employment, which at this stage, must be construed in the light most favorable to Plaintiff. Thus, for the purpose of ruling on the motion for summary judgment,

---

[4]The Court is cognizant of Defendant's argument that this doctrine "makes no sense and deprives employers of any ability to properly protect themselves from the unknown motivations of [their] employees." Reply Brief at 4 n.5.

7

the Court will presume that Trowery and Sullivan were among the decision-makers.

Federal Rule of Evidence ("FRE") 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In this case, Plaintiff intends to testify as to her own recollection of statements allegedly made to her by Trowery during a telephone call which occurred at some point in time after his employment with Dollar General had been terminated. Plaintiff clearly seeks to offer these statements to prove the truth of the matter asserted, i.e., that Trowery and Sullivan concocted the Racial Slur story as a pretext or cover-up to justify her being fired. Thus, the proposed testimony falls within the definition of "hearsay."[5] FRE 802 provides that hearsay is generally not admissible.

FRE 801(d) clarifies that certain statements are not hearsay. The most closely-applicable provision to this scenario is Rule 801(d)(2)(D): "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, ***made during the existence of the relationship***." (Emphasis added). In *Young v. James Green Mgt., Inc.*, 327 F.3d 616, 621-23 (7th Cir. 2003) (similar allegations of improper conduct made by ex-employee held inadmissible), the Court of Appeals for the Seventh Circuit explained that the policy underlying Rule 801(d)(2)(D) does not apply to ex-employees because they are no longer inhibited from making false statements that could harm their former employer. As Plaintiff recognizes, at the time of the alleged statements by Trowery, his employment relationship with Dollar General no longer existed. It is clear that statements of ex-employees cannot be introduced as non-hearsay admissions by a party-opponent. Further, none of the hearsay exceptions in F.R.E. 803 or 804 are applicable under the facts of this record. Accordingly, Plaintiff's proposed testimony regarding Trowery's alleged statements, in its current form, would not be admissible.

That, however, does not end the analysis insofar as hearsay testimony may be considered by the Court in ruling on a motion for summary judgment if it appears that the testimony can be

---

[5]At least some of the proposed testimony involves inadmissible double-hearsay. *See* Theriault Dep. at 108 ("He [Trowery] told you Jim Sullivan told him that?"). *Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988).

8

presented in an admissible form at trial. *Williams v. Borough of West Chester*, 891 F.2d 458, 465 n.12 (3d Cir. 1989). For example, Trowery and/or Sullivan could offer direct testimony regarding their alleged pretextual scheme. However, there is no basis or support in the current record now before the Court that Plaintiff will be able to present such direct evidence from either of these individuals. In Trowery's second deposition, he unambiguously testified that his statement to Barrett regarding the March 3, 2006 telephone call which he received was accurate. Trowery Dep. II at 26. The reference to his having lied during the workers' compensation hearing was specifically limited to whether Trowery saw a phone number on his Caller ID, which is an immaterial detail. Trowery has never wavered in his testimony that someone used a Racial Slur during a telephone call to him on March 3, 2006. Sullivan's deposition was taken on July 31, 2007 – the day after Theriault's deposition. Plaintiff did not submit any exerpts from Sullivan's deposition. The exerpts submitted by Defendant do not directly address Therialt's allegations about the pretextual scheme. Sullivan did testify that he did not disagree with the decision to terminate Plaintiff's employment although he was not part of the decision-making process. Sullivan Dep. at 50. In sum, it appears that Plaintiff will not be able to present the questionable hearsay testimony in an admissible form at trial. *See generally Williams*, 891 F.2d at 860 & n.2 (discussing unsubstantianted factual allegations of an implausible conspiracy made by plaintiff in opposition to summary judgment motion). Accordingly, the Court will not consider Theriault's deposition testimony regarding the alleged pretextual scheme to justify her employment termination in ruling on the summary judgment motion.

Legal Analysis

The complaint asserts three causes of action: (1) sexual harassment due to a hostile work environment in violation of Title VII; (2) retaliation in violation of Title VII; and (3) retaliation for attempting to obtain workers' compensation benefits. The Court will address these claims seriatim.

1. Sexual Harassment/Hostile Work Environment

Count One of the Complaint asserts a claim for sexual harassment due to a hostile work environment in violation of Title VII. The relevant portion of Title VII provides:

**§ 2000e-2. Unlawful employment practices**

**(a) Employer practices.** It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e-2(a)(1).

To prove a prima facie case of discrimination under Title VII based on a hostile work environment, a plaintiff must establish the following: (1) the employee suffered intentional discrimination because of sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir.1997) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990)); *Jensen v. Potter*, 435 F.3d 444, 449 n. 3 (3d Cir.2006), *overruled in part on other grounds by Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (clarifying that the applicable standard is "severe or pervasive" rather than "pervasive and regular").

Defendant contends that Plaintiff cannot make out a prima facie case of hostile work environment discrimination because the alleged harassment was neither severe nor pervasive. The Court agrees. Title VII does not create a general civility code and is only violated where the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). The relevant circumstances include the frequency and severity of the conduct, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interferes with the victim's work performance. *Faragher v. City of Boca Raton*, 524

U.S. 775, 787 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993)). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

The evidentiary record in this case falls far short of the applicable standard. Plaintiff alleges, at most, six comments made by Trowery over the course of three months. The comments may have been unwelcome, but they were certainly not physically threatening or humiliating. No physical contact or interference with work performance was involved. When Plaintiff requested that any such comments stop, they indeed stopped. In fact, Theriault did not even report the December conduct to the ERC.[6] Moreover, Trowery was not physically present at the Bellevue store every day and Theriault, for the majority of time, was also absent from the store, such that the conduct cannot be deemed to have been pervasive. Isolated incidents, teasing and offhand comments may be offensive but they do not constitute actionable harassment because of Plaintiff's sex. *Faragher*, 524 U.S. at 788. Accordingly, Defendant is entitled to summary judgment on the sexual harassment/hostile work environment claim.

2.  Title VII Retaliation

In Count II, Theriault alleges that Dollar General terminated her employment in retaliation for complaining about sexual harassment. It is not necessary for a plaintiff to prove the merits of an underlying discrimination complaint in order to invoke the anti-retaliation protection of Title VII. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). A plaintiff need only have a "good faith, reasonable belief that a violation existed." *Id.* Thus, even though the Court has found that Plaintiff does not have a valid claim under Title VII for sexual harassment, she could still prevail on her retaliation claim.

As recently summarized in *Kress v. Birchwood Landscaping*, 2007 WL 800996 (M.D. Pa.

---

[6]The Court need not reach Defendant's alternative argument that Theriault unreasonably failed to take advantage of its anti-harassment policy.

2007):

> Title VII prohibits an employer from "discriminat[ing] against" an employee because the employee "opposed any practice" prohibited by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" undertaken pursuant to Title VII, 42 U.S.C. 2000e-3(a); To establish a prima facie case of retaliation in violation of Title VII, the plaintiff must prove three elements by a preponderance of the evidence. First, the plaintiff must show that she engaged in an activity protected under the statute. A protected activity is any activity provided for by either the participation clause or the opposition clause of the statutory language. '[I]nformal protests of discriminatory employment practices, including making complaints to management' " constitute opposition. Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. ... Second, the plaintiff must show that she suffered a materially adverse action. ... Finally, the plaintiff must show that the materially adverse decision was causally related to the protected activity. ("Many may suffer ... harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief.") The causal relationship identifies the "retaliatory animus."

*Id.* at *17 (citations omitted). Retaliation claims follow the familiar *McDonnell-Douglas* burden-shifting approach. To state a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) Dollar General took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

Defendant contends that Plaintiff cannot make out a prima facie case of retaliation because she did not engage in protected activity. Defendant argues that Plaintiff made only three "half-hearted attempts" to complain about Trowery's alleged comments. However, construing the record in the light most favorable to Plaintiff, the Court concludes that she acted appropriately by telling Sullivan that she had a complaint involving "sexual harassment" by Trowery. *Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995) (making complaints to management is a type of protected activity). It was Sullivan who had responded to Plaintiff's earlier complaint to the ERC that Trowery was forcing her to work beyond her medical restrictions. Theriault's conduct cannot fairly be portrayed as half-hearted because Sullivan promised to return her phone call(s).

However, to constitute "protected activity," the employee must also have a "good faith,

12

reasonable belief that a violation existed." *Aman*, 85 F.3d at 1085. In *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), the Court of Appeals for the Third Circuit explained:

> Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Clark County v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination).

In *Wilkerson v. New Media Technology Charter School, Inc.*, 522 F.3d 315, 322 (3d Cir. 2008), the Court stated: "To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."

In late-February and early March 2006, there was only a single allegation of "sexual harassment" – Plaintiff's own testimony of a phone call with Taneisha Stewart, in which Stewart allegedly stated that Trowery told her that Theriault offered to show Trowery "the time of his life."[7] In other words, Plaintiff did not allege that Trowery was harassing her, but rather, that he (presumably falsely) accused *her* of making a sexual advance to *him*. Theriault was on medical leave at the time, such that the alleged comment could not have impacted the conditions of her employment. For the reasons explained above, this single, isolated comment falls so far short of the type of severe and pervasive harassment needed to constitute unlawful discrimination that Theriault could not have had a good faith, reasonable belief that Title VII was being violated. Therefore, her effort to report such conduct to Sullivan did not constitute "protected activity." Accordingly, the Court concludes that Plaintiff has not met her burden to articulate a prima facie case of retaliation.[8]

The mere fact that Theriault accused Trowery of "sexual harassment" does not insulate

---

[7]The Court will assume, arguendo, that Plaintiff's testimony is admissible.

[8]The Court need not reach Defendant's argument that the Plaintiff's alleged use of the Racial Slur was an intervening causal event.

13

her from termination for use of a Racial Slur, nor does it require a federal jury trial. Because Plaintiff cannot establish a prima facie case of retaliation due to her not having engaged in protected activity, the Court need not reach the parties' arguments regarding pretext. Accordingly, Defendant is entitled to summary judgment on the retaliation claim in Count Two.

      3.      Workers' Compensation Retaliation

Count Three asserts a state law cause of action of retaliation for making a claim for workers' compensation benefits. A number of federal courts have concluded that the Title VII framework applies to such claims. *Hoshak v. Sysco Food Services of Pittsburgh*, 2006 WL 2945357 *6 (W.D. Pa. 2006). In order to satisfy the prima facie case, Plaintiff must demonstrate a causal link between her claim for workers' compensation benefits and her termination from employment. *Hackett v. Community Behavioral Health*, 2005 WL 1084621 *10 (E.D. Pa. 2005).

The evidence of such a causal link is wholly lacking in this evidentiary record. Plaintiff's hand injury occurred in November 2005 and she was on restricted duty, or off work entirely, thereafter. Although a jury could conclude that Trowery pressured Theriault to return to work, when Theriault complained to the ERC, Dollar General was supportive and responsive. Indeed, Sullivan instructed Plaintiff to remain away from work and assured her that her job would be protected. In light of the fact that she was already receiving workers' compensation benefits, Theriault did not make any further efforts in that regard near the time of her discharge. Accordingly, Defendant is entitled to summary judgment on this claim.

In accordance with the foregoing, Defendant's MOTION FOR SUMMARY JUDGMENT (Document No. 18) is **GRANTED**. The clerk shall docket this case closed.

SO ORDERED this 22nd day of May, 2008.

                                                        BY THE COURT:

                                                        s/ Terrence F. McVerry

United States District Court Judge

cc: Samuel J. Cordes, Esquire
Email: scordes@ocmilaw.com
John E. Black, III, Esquire
Email: jblack@ocmilaw.com

Elizabeth S. Washko, Esquire
Email: liz.washko@odnss.com
Thomas A. Smock, Esquire
Email: tsmock@politolaw.com